MICHAEL McGUIRE v. JOHN GALLIGAN AND WILLIAM F. MONTAGUE.

*Replevin and trover for property taken on execution—Exemptions—Damages —Assignment of claim to attorney—Judgment in bar.*

1. The assignment to one's attorney of his claim for a conversion of his property does not bar his right of action thereon.

2. In trover against a sheriff for tools of one's trade seized upon execution, damages are not recoverable for the breaking up of plaintiff's business where that results from the award of the property to defendant in an action of replevin therefor.

3. Failure to give bond in replevin is no ground for dismissing the suit, which can still be tried on the merits.

4. The measure of damages in trover for mortgaged property seized upon execution cannot exceed what the property was worth after deduct. ing the amount of the mortgage at the time of the levy, and allowing interest, where replevin had failed, from the date of the return to defendant.

5. A judgment for defendant, in replevin for exempt property taken by him on execution, bars trover against him for its conversion unless after the return of the property and before its sale the claim of exemption is plainly made.

6. A sheriff who has had judgment in replevin for goods seized by him under an execution, is not liable for not thereafter setting it aside as exempt, unless requested.

Error to Kalamazoo. (Mills, J.) May 5–6.—May 13.

TROVER. Defendants bring error. Reversed.

*Hawes & Shakespeare* for appellants. Assignors have no concern in a claim after selling their interest: *Final v. Backus* 18 Mich. 218; *Cook v. Bell* id. 387; How. Stat. § 7344; *Watson v. Watson* 49 Mich. 545; *Brewer v. Dodge* 28 Mich. 359; *Webster v. Hitchcock* 28 Mich. 56; *Perkins v. Perkins* 16 Mich. 162; but see *Newberry v. Trowbridge* 13 Mich. 263; *Austin v. Birchard* 31 Vt. 589, and *Guernsey v. Burns* 25 Wend. 411; and contra *Lee v. Jilson* 9 Conn. 94; *Curtis v. Bemis* 26 Conn. 1; *Anderson v. Martindale* 1 East 497; *Mitchell v. Kirtland* 7 Conn. 230; *Perkins v. Perkins* 7 Conn. 558; damages in trover for such personal property as can be readily obtained and has a market value, is such value and interest; in two cases it has been ruled in England that other special damages may be given, but these cases have been condemned by great authority in this country, and the market value and interest adhered to: Sedg.' on Dam. (5th ed.) ch. 19 pp. 543–4; 2 Greenl. Ev. § 276; *Brizsee v. Maybee* 21 Wend. 145; *Curtis v. Ward* 20 Conn. 204; *Hurd v. Hubbell* 26 Conn. 389; *Cook v. Loomis* 26 Conn. 483; *Tenney v. State Bk.* 20 Wis. 152; *Ripley v. Davis* 15 Mich. 75; *Allison v. Chandler* 11 Mich. 554; *Outton v. Barnes* Litt. Sel. Cas. 137.

*Powers & Oxenford* for appellee.

CAMPBELL, J. This is an action of trover to recover for

the alleged levy on exempt property. The case was here before, as reported in 53 Mich. 453. There several of the questions raised here were disposed of. It was held there that the execution under which defendants levied was a valid one. It was also held that if plaintiff repudiated his own title to property seized, the officer was not bound to abstain from taking it. There were also some other points passed upon which have not entirely disappeared from the controversy as now presented.

So far as the facts are material for an understanding of the controversy, they may be briefly referred to. McGuire, in the early part of January, 1883, was owner of two horses and a jaunting car, for passengers, and a baggage express wagon and single harness, and the usual robes, covers, etc. On January 6, 1883, defendants, or one of them, being sheriff and deputy, levied on the horses and on some property belonging to other persons. The horses were returned that evening to plaintiff, who then, or thereafter, receipted for them. The other property was subsequently levied on, but receipted, and not disturbed more than temporarily. A few days thereafter plaintiff replevied, and held under the replevin until March 26, 1883, when the writ was dismissed and judgment given for return. The whole property was appraised at $140, and the value alleged in the declaration in replevin at $200. After this return the property was sold on the execution, subject to a chattel mortgage, for about $50, the mortgage being for $150, and interest from December 2, 1882. Mr. Balch, the execution creditor, who had bid off the property subject to the mortgage, purchased it of the mortgagee.

It appeared on the trial that McGuire had assigned his claim to his attorneys, Powers & Oxenford, but we do not think this barred his action for the conversion of his property if he had any right of action.

The largest portion of the damages allowed in this case was based evidently upon an alleged destruction of business, and a recovery was permitted under the charge for that.

When the case was up before, the record was so different

in some respects from this that we declined deciding whether any such ground of damages was admissible. But we pointed out that if it could be admitted, no proper instructions were given whereby the jury could be enabled to measure either time or extent, and it was said that no possible theory could account for the verdict.

The present record is open to the same difficulty. The charge was apparently intended to fix the delivery back to the sheriff of the property after the replevin suit as the beginning of the breaking up of the business, as it very clearly was, inasmuch as there was no serious interference with its use any earlier; and the commencement of the present suit was evidently meant to fix the end of the period of loss of business,—or between four and five months. But this is left obscure, and no instruction was given which would enable the jury to discriminate between a loss of business, arising solely from the loss of the exemption, and a loss from the disposal of the whole property. Neither was there any testimony whatever which was adapted to inform the jury concerning the basis of such loss during the interval.

But upon a careful review of the case we think it is not one which will permit any such ground of recovery. It was at worst a mere conversion of property, which has a market value and which can be replaced. Further than this, it was a case where all the material wrong done, if any, was capable of prevention by an action of replevin. Such an action was brought, and the plaintiff obtained possession under it. If that action had proceeded to judgment in the usual way, and plaintiff had prevailed, he would have had no claim for solid damages. His failure to give bond was no ground for dismissing the suit, which might still have been tried on the merits. The possession which defendants obtained under that judgment was not tortious in itself, but such as the law gave them, with plaintiff's acquiescence. It would be contrary to all equity to permit this to be treated as a tortious breaking-up of plaintiff's business. It could not, if involving a violation of his rights, be anything more than a conversion

which involved no more than the money value of the property converted.

Moreover, under the chattel mortgage, which the purchaser had a clear right to keep on foot if he chose, he had the power of assuming possession at any time, and thus terminating plaintiff's means of continuing his business with the mortgaged property. The measure of damages, allowing all rights of exemption, could not exceed the sum of $250, with interest from the return of the property replevied, and could not reach that, unless the property levied on was worth that sum after allowing the amount of the mortgage at that time.

The other questions are not likely to arise again, and we do not deem it necessary to discuss them at length. We are not prepared to say that the judgment in replevin was an absolute bar to this action, but it would be so unless, after the return of the property and before sale, the claim of exemption was plainly made. We do not think the sheriff could be held responsible for not setting apart property as exempt thereafter unless requested.

In the absence of argument upon the method in which he could proceed if such demand were made concerning property mortgaged, we cannot consider that matter.

The judgment must be reversed and a new trial granted.

The other Justices concurred.